IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PAULETTE M. GUAJARDO, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Case No._____ |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, | § | |
| Defendant | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
& APPLICATION FOR INJUNCTIVE RELIEF**

Plaintiff Paulette Guajardo, the duly elected Mayor of the City of Corpus Christi,

Texas, complains of defendant City of Corpus Christi, Texas, as follows:

**SUMMARY OF COMPLAINT**

Mayor Paulette Guajardo seeks a temporary restraining order to block

the City from suspending her at the April 14, 2026, council meeting

without a pre-deprivation hearing because doing so would violate the

United States and Texas constitutions.  The City is pursuing removal

based on disputed and evolving allegations tied to a 2024 economic

incentive vote, despite prior law enforcement investigations finding no

wrongdoing. The Mayor asserts claims arising out of violations of her

procedural and substantive due process.

**I. PARTIES**

1.      Plaintiff Paulette M. Guajardo, a resident of Corpus Christi, Nueces County,

Texas, appears individually and in her official capacity as the duly elected Mayor of the

City of Corpus Christi, Texas.

2.      Defendant City of Corpus Christi, Texas, is a home-rule municipality of the State of Texas.

## II. JURISDICTION AND VENUE

3.      This court has original jurisdiction over the claims raised in this complaint under 28 U.S.C. §1331 because Plaintiff's claims arise under the laws of the United States and the harm to Plaintiff occurred in Nueces County, Texas.

4.      This court has original jurisdiction over the claims raised in this complaint under 28 U.S.C. §1343(a)(3) because Plaintiff's claims aim to redress the deprivation of constitutional or federal statutory rights by actions occurring "under color of any State law, statute, ordinance, regulation, custom, or usage."

5.      Venue is appropriate in the Southern District of Texas under 28 U.S.C. §1391 because the acts giving rise to Plaintiffs' claims all occurred in the Southern District of Texas.

6.      Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. §1367 to adjudicate pendent claims arising under Texas law.

## III.  FACTUAL BACKGROUND

CITY COUNCIL APPROVAL OF ECONOMIC INCENTIVE

7.      In 2023, a Corpus Christi hotel developer, Elevate QOF, LLC, applied for $2 million in funding to assist in the construction of a downtown hotel project from a "Type B Corporation" affiliated with the City of Corpus Christi.  The Type B Corporation typically awards grants based on the creation of new jobs and by its economic analysis would support the award of an incentive a little over $1 million.  The developer proposed

an additional argument that "new" FEMA flood maps required a higher first floor elevation so greater expense would be incurred for planned retail at street level to be accessible. Additional factors to assist in the redevelopment of the downtown area included a planned rooftop bar, TopGolf suites and other amenities so that it would be a transformative project for that part of downtown.

8. On December 11, 2023, the Type B Corporation Board unanimously approved an incentive for $2 million. In its discussion, the justification based on FEMA flood map changes was a "non-starter" and not an acceptable reason for consideration since it would open Type B funding potentially to fix flood issues all over the City. The reason for approval was based on it being a transformative project for downtown. On January 22, 2024, the Type B Corporation Board unanimously approved an incentive agreement for $2 million in funding. Nothing in the agreement said anything about any changes in FEMA flood maps.

9. On February 20, 2024, the Corpus Christi City Council considered approval of the incentive agreement and the Type B Corporation's funding of $2 million in first reading of Ordinance required under state law and the City Charter. Nothing in the body of the ordinance (including the Whereas clauses) or in the incentive agreement referenced FEMA funding, but the same slide deck was presented to the City Council. The agenda posting and the caption at the top of the Ordinance mentioned the changes in the FEMA flood maps. The City Council approved the Ordinance on 7-1-1 vote (one abstention).

10. Although the second reading of the Ordinance was scheduled for approval on February 27, 2024, it was withdrawn due to comments made by a local citizen and

3

competing hotelier, Ajit David, noting the misrepresentation of the FEMA website page by covering the larger date that the FEMA flood maps had become available.  City staff investigated the matter and confirmed that the PowerPoint slide showed an altered screenshot of the FEMA website.  The matter was held up several weeks as Mr. David and others argued that the incentive should not be granted due to alteration of the screenshot of the FEMA website.

11.    After several weeks, Mayor Paulette Guajardo, City Councilman Roland Barrera and other members requested that the item be put on the City Council for consideration on April 23, 2024, for a full discussion of all of the issues presented.  The caption for the Ordinance was changed to delete the references to the FEMA flood maps, and the slide in the PowerPoint presentation was changed to eliminate the FEMA website information.  The Agenda Memorandum presented by City staff noted the justification used by the Type B Corporation based on the project transforming that area of downtown.

12.    At the April 23, 2024, meeting, the Type B Corporation Board Chair Leah Olivarri testified that the FEMA flood map justification was a "non-starter" and rejected by the Type B Corporation Board as a reason for awarding the $2 million incentive.  The project was recommended because of its transformative nature for that part of Downtown that had been vacant for many years.  Others testified that the slide with the FEMA information should not have been included in the first City Council presentation because that was not the basis for the Type B Corporation's approval.   Mr. David and other opponents of the project argued that the falsification of the FEMA website depiction should be the basis for denying the incentive.

13.    Several City Councilmembers stated that the FEMA website issue was irrelevant to the consideration of the project.  One Councilmember wanted to refer the matter back to the Type B Corporation for clarification of the issue, but he did not get any support for that motion.  The Ordinance, with the revised caption to delete the reference to the FEMA flood maps, was approved on second reading on a vote of 5-3-1 (with one abstention).

LAWSUIT FILED BY AJIT DAVID

14.    On October 23, 2024, shortly before the City Council elections on November 5, 2024, Ajit David filed a lawsuit against the City of Corpus Christi in Texas District Court seeking a declaratory judgment that the incentive award was invalid due to fraud and the misrepresentation of the FEMA website.  In the complaint, he accused Mayor Guajardo of misconduct in seeking the approval of the incentive award even though she, City staff and other members of the City Council had been advised of the alteration of the FEMA website in the presentation to the City Council at first reading of the Ordinance on February 20, 2024.

15.    On November 5, 2024, Mayor Guajardo received the highest number of votes in the election but was scheduled to be in a run-off election to finally decide the Mayor's race in December.  On November 23, 2024, Mr. David amended his complaint to name Mayor Guajardo as an additional party in the lawsuit.  On December 14, 2024, Mayor Guajardo was successful in being reelected as Mayor of Corpus Christi.

16.    In the discovery process of the Ajit David litigation, Mr. Phillip Ramirez admitted in his deposition of placing one or more white boxes over portions of a screenshot

of the FEMA website by mistake which covered the date that the new maps had become available.

17.     On November 17, 2025, the defendant City herein filed a Second Amended Plea to the Jurisdiction in the Ajit David litigation.  It, and its Exhibits A-F, is attached hereto as Exhibit 1 and its 1A-1F and incorporated herein as if set forth fully.  Such plea remains pending.

<u>PETITION FOR REMOVAL OF MAYOR FILED</u>

18.     On August 29, 2025, a Petition for Removal was filed with the City Secretary by Rachel Caballero and five others under Article II, Section 11 of City Charter alleging six (6) bullet points relating to the April 23, 2024, City Council meeting:

- Phillip Ramirez altered a screen shot of a page on the FEMA website to delete a date reference when new flood maps had become available.

- Mayor Guajardo had been told by Peter Zanoni prior to the 4/23/24 meeting that the "FEMA/federal document" had been altered.

- Mayor Guajardo was told on 4/16/2024 by Ajit David that the screen shot had been altered.

- Mayor Guajardo was told again by Ajit David on 4/23/24 that the screen shot had been altered.

- Other information confirms that Mayor Guajardo had been told prior to 4/23/24 that the screen shot had been altered.

- "With full knowledge" of the wrongful acts of Phillip Ramirez, Mayor Guajardo directed Peter Zanoni to put the matter on the city council agenda for 4/23/2024 and participated in and aided in the approval of the $2 million incentive agreement.

19.     The claimed wrongdoing by Mayor Guajardo was in putting the matter on

the City Council agenda for consideration on April 23, 2024, even though she was aware of the alteration of the FEMA webpage.

20.     In reality, Mayor Guajardo did not direct that the item be placed on the agenda for consideration on second reading on April 23, 2024.  According to the deposition of Peter Zanoni, other city council members also were requesting that the item be placed on the agenda for April 23, 2024, and in fact the evidence will confirm that several city council members at that time were talking to the city manager about putting the matter back on the agenda for a public discussion and vote.

21.     Each City Council member then can cast a vote on the matter that is a public record.  In this case, the first reading was approved by a vote of 7-1-1 and the second reading was approved by a vote of 5-3-1.  Michael Hunter was the only City Council member consistently to vote nay.

22.     The petition included that statement that Philip Ramirez was a "campaign contributor to Paulette Guajardo."  Mr. Ramirez contributed $1,000 to Mayor Guajardo's campaign on April 14, 2022; however, in 2024 he was a contributor to the Michael Hunter campaign for Mayor.

23.     The facts underlying the allegations of wrongdoing contained in the petition for removal were investigated by federal and state law enforcement.  The work product of such investigations is contained in the Corpus Christi Police Department's "Project Elevate" Investigation File, attached hereto as Exhibit 2, and incorporated herein as if set forth fully.  The investigations confirmed that no criminal violations occurred.

24.     On March 11, 2026, three council members submitted a memo requesting

7

that an agenda item be added to the March 24 agenda to discuss the removal petition and determine if any formal proceedings should be taken.

ARTICLES OF IMPEACHMENT FILED

25.    On March 10, 2026, "Articles of Impeachment" were filed with the City Secretary with numerous references to "Exhibits" that have never been provided to the Mayor, her counsel, nor made available to the public.

26.    The "Articles of Impeachment" allege new and different grounds for removal that were not contained in the Petition for Removal.

27.    "Article One" is entitled "Fraud; Aiding and Abetting Fraud" and although the charges are vague and lack essential facts and elements to provide due notice, they appear to based on the false narrative that the incentive application was criminally fraudulent and that the Mayor advocated or promoted such fraudulent scheme.

28.    "Article Two," "Perjury is "Misconduct", which also is vague and lacks essential facts and elements to provide due notice, makes the unfounded allegation that Plaintiff perjured herself in a deposition in the Ajit David litigation. The allegation of perjury does not include how the Mayor committed perjury.  It contains no reference to her testimony and no factual or legal allegation of an intent to deceive, her alleged knowledge of any statement's meaning, and no factual or legal allegation that she swore to the truth of a false statement.

29.    No evidence of perjury exists because no evidence confirms that anyone at the City knew about the discrepancy between the FEMA document and the presentation being made on February 20, 2024.  When the matter was brought up for second reading

8

and approval on April 23, 2024, the justification was on completely independent grounds without regard to FEMA flood map issues.

30.    "Article Three" is entitled "Breach of Confidentiality is 'Malfeasance'". Although it is also constitutionally infirm from a due notice standpoint, it appears to be based on the notion that when the Type B Corporation held a confidential meeting to discuss Elevate QOF LLC project's request, the Mayor somehow breached confidentiality by revealing the board's internal processes with a representative of Elevate QOF LLC. Communication with a party with an action pending before a private corporation such as the Type B Corporation is not a breach of any confidential information.  Besides, actions relating to the Type B Corporation are not actions relating to the City of Corpus Christi. There is no evidence of any breach of any of the Type B's Bylaws and rules, but such would be a matter for the Type B Corporation to handle.

31.    "Article Four", "Deletion of Public Information is 'Misconduct'" makes the false factual allegation that the Mayor instructed employees to delete the Agenda Memo, original Ordinance No 24-0256 (version 1), FEMA Flood Maps, Exhibit A and the original "altered, fraudulent Presentation" from the City's web-based legislative management software, Legistar for the February 20, 2024, meeting and update it with the information presented for the second reading on April 23, 2024.  In reality, When City staff uploaded a new Agenda Memo, presentation materials and Ordinance for the meeting on April 23, 2024, those documents took the place of the original documents in the file on the database. Whenever City staff corrects errors in a document or provides new information, the new documents automatically replace the prior documents.  That simply is the way the Legistar

9

database system works.  When the referenced documents are changed for one agenda item, they automatically are updated for the prior reading since both readings are linked to the same file in the database.[1]

32.    Article II, Section 11 of the City Charter reads as follows:

Sec. 11. - Removal.

(a)  A council member shall be subject to removal by the council or by any other means authorized by law for:

(1)  Willful violation of any code of ethics or conflicts of interest provision under state or federal law or city ordinance.

(2)  Willful violation of any express prohibition of this Charter.

(3)  Misconduct, malfeasance, incompetence, inability or willful neglect in performance of official duties.

(4)  Conviction of any felony, or any misdemeanor involving moral turpitude.

(5)  Failing to maintain any residency requirement provided by law.

(6)  Absence from three consecutive regular council meetings without leave of absence first had, except due to circumstances over which the council member had no control.

(b)  A removal action by the council may be instituted on its own initiative, or shall be instituted upon petition by five or more registered voters, and any final decision to remove a member shall be by the majority vote of all council members holding office, with the exception of the challenged member. The council may provide by ordinance for the referral of any disciplinary matter involving a council member to the ethics commission for recommendation. The challenged member shall have the right to written articles of impeachment, an opportunity to be heard, to be represented by counsel, to summon witnesses who shall be required to give testimony, and to reasonable advance notice of the hearing The burden of proof shall be on those bringing the charges. The hearing shall be open to the public, and the conclusions and findings of the council shall be final. If the member is removed, a complete statement of the reasons therefor shall be filed with the city secretary. The council shall additionally have the authority to reprimand or suspend a member for a period of not more than thirty days if removal is not warranted.

(c)  Pending charges for removal, the council may suspend the challenged member from office for a period not exceeding thirty days by the majority vote of all council members holding office, with the exception of the challenged member.

(d)  Commission of any of the violations specified in subparagraphs (1) through (5) above shall additionally be grounds for forfeiture of office in proceedings pursuant to state law.

(e)  A member who is removed from office, whether pursuant to this section, by recall or other legal proceeding, or who resigns after any such proceedings have been initiated, shall not be eligible to be appointed to or run as a candidate for city office for two years from the date of removal, recall or resignation.

---

[1] Ironically, when the Agenda for April 14, 2026, is reviewed on Legistar today, the viewer can no longer see the August 2025 "Petition for Removal" that used to be displayed because it has been "replaced" by the "Articles of Impeachment."

33.    On April 8, 2026, the undersigned emailed to each council member and the city secretary the letter and its attachments attached hereto as Exhibit 3 and its 3A and 3B.

APRIL 14, 2026, CITY COUNCIL MEETING AGENDA

34.    On April 8 or 9, 2026, The City of Corpus Christi Meeting Agenda – Final-revised was posted on Legistar.  It is attached hereto as Exhibit 4.  It contains item 21 for individual consideration:

| 21. | 26-0510 | Discussion and/or possible actions on preliminary and procedural matters for removal proceedings of the mayor, including but not limited to potential certification of Articles of Impeachment, potential suspension, potential reprimand, potential denial of removal action, potential scheduling of pretrial hearing(s) and/or removal hearing, and/or a Resolution scheduling a pretrial hearing on May 19, 2026, to entertain motions, witness lists, requests for summonses, and all other related matters for the Removal Action of the Mayor, and adopting Rules of Procedure for City Council Hearing for Removal Action.<br>***Sponsors:*** City Secretary's Office |
| --- | --- | --- |

35.    The Agenda item 21, file # 26-0510,[2] contains 5 attachments.  They are attached hereto as Exhibit 5A through 5E.

36.    The Agenda's Attachment 1 (Exh. 5A herein), entitled "*Agenda Memo – Preliminary Procedural Matters for Removal Hearing 4.10.pdf*" recites four options available to the council on April 14, including certification of the Articles of Impeachment and "suspension of the mayor up to 30 days":

---

[2] https://corpuschristi.legistar.com/LegislationDetail.aspx?ID=7973096&GUID=EE0E4773-41C9-41CE-9902-9048F485F601&Options=&Search= accessed on April 13, 2026, at 8:57 a.m.

11

**ALTERNATIVES:**

1. Request staff to prepare an ordinance to refer to the Ethics Commission
2. Deny Removal Action
3. No Action
4. If the Articles of Impeachment are certified (charges are pending), suspension of the mayor up to 30 days.

37. After issuance of the Agenda Memo, the undersigned asked the City's counsel to confirm on behalf of his client that a suspension of the Mayor was off the table at the April 14, 2026, council meeting when the agenda item is to be discussed. Such assurance could not be provided.

38. On April 9, 2026, when council member Hon. Gil Hernandez commented to media about the upcoming April 14, 2026, agenda item, he declared, "We are technically the Judge and jury on this process […]."[3]

39. As it stands and based upon Section 11's subsection (c), the Mayor is faced with a potential vote on April 14, 2026, by the Corpus Christi city council that would remove her through suspension, or, reprimand her.

### IV. CAUSES OF ACTION

40. Plaintiff has suffered, and faces imminent threat of, multiple violations of her rights under the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. §1983, including but not limited to the following:

**Procedural Due Process Violations (Existing and Imminent)**

---

[3] https://youtu.be/6d5GpruwsJY?si=S-72Fw2cxDUBwvGa

41. Defendant has asserted authority to suspend Plaintiff without first providing notice and a meaningful opportunity to be heard, in violation of the fundamental requirement that deprivations of protected interests based on disputed facts must be preceded by a hearing.

42. Defendant's contemplated course of action includes imposing a punitive consequence—suspension removal—*before* providing constitutionally required process, violating the fundamental sequencing required by due process.

43. Defendant intends to conduct proceedings before a tribunal that includes members who are material witnesses to the underlying events, thereby depriving Plaintiff of her right to a fair and impartial adjudicator.

44. The governing framework requires participation by individuals who are disqualified due to their involvement as witnesses, rendering any tribunal inherently unlawful and constitutionally defective.

45. Defendant has initiated and advanced proceedings that cannot lawfully result in a valid decision, demonstrating that the outcome is predetermined or the process is a pretext, in violation of due process.

46. The accusations against Plaintiff have expanded, evolved and altered – apparently under the authority of the City's Charter, through subsequent "Articles" or similar mechanisms, depriving her of clear notice of the charges and a meaningful opportunity to prepare a defense.

47. The procedures contemplated do not ensure a full and fair opportunity to present evidence, confront accusers, and respond to all allegations prior to deprivation.

Even setting aside any issue regarding pre-deprivation suspension, the Rules themselves create a process that is fundamentally unreliable and constitutionally deficient.

48.    The proposed procedural rules fail to ensure adequate notice and a meaningful opportunity to prepare a defense. The Rules contain no requirement that the accused receive a detailed, fixed statement of charges or advance disclosure of the evidence to be used against her. This omission permits shifting accusations and trial by surprise, depriving the Mayor of a fair opportunity to respond to the case she must meet.

49.    The proposed Rules impose an extraordinary limitation on representation, restricting each party to a single individual to present evidence, examine witnesses, and argue the case. In a proceeding involving the potential removal of a duly elected official and complex factual issues, this constraint materially impairs the ability to mount an effective defense and undermines the reliability of the adjudicative process.

50.    The procedures create a heightened risk of erroneous factfinding by concentrating investigative and adjudicative functions in the same body. Council members are permitted to question witnesses, call witnesses, and rule on evidentiary issues. This blending of roles erodes the neutrality expected of a decisionmaker and increases the likelihood that outcomes will be influenced by factors other than the evidence presented.

51.    The proposed Rules provide for ad hoc and discretionary evidentiary determinations without clear standards. Evidence is admissible if it is of the type "commonly relied upon by prudent persons," and the Council may override evidentiary rulings by vote. These vague and shifting standards lack the predictability and consistency

14

necessary for fair adjudication and permit arbitrary inclusion or exclusion of critical evidence.

52.    The proposed procedures fail to create a reliable record for review. The record is limited to minutes and admitted exhibits, with no requirement for a transcript or verbatim recording of testimony. Without a complete record, there is no meaningful way to evaluate credibility determinations or ensure accountability, rendering any review illusory.

53.    These procedural due process deficiencies are not justified by any countervailing governmental interest. The underlying events are not recent, and there is no urgency requiring streamlined or informal procedures. Where the government lacks a legitimate need for haste, it must provide greater—not lesser—procedural protections.

**Substantive Due Process Violations (Existing and Imminent)**

54.    Defendants are proceeding despite the absence of sufficient evidence of wrongdoing, rendering the action arbitrary and without a rational basis.

55.    The proceedings are being advanced in circumstances where the only plausible basis is political motivation rather than legitimate governmental objectives.

56.    Plaintiff is being targeted for engaging in core governmental functions, including participating in public meetings, placing or considering agenda items, and voting on matters of public concern.

57.    Plaintiff is being singled out for actions taken collectively with other officials or consistent with standard governmental practice, without a rational basis for differential treatment.

58.    The combination of structural unfairness, lack of evidentiary basis, and punitive intent rises to the level of conscience-shocking governmental conduct.

**Additional Constitutional Deprivations (Existing and Imminent)**

59.    Plaintiff's recognized interest in her elected position is being impaired or threatened without constitutionally adequate safeguards.

60.    Defendant's actions would nullify the will of the electorate by removing or suspending a duly elected official without lawful process.

61.    The accusations and proceedings impose reputational harm in connection with the threatened loss of office, satisfying the "stigma-plus" doctrine.

62.    The use of removal proceedings in this manner chills lawful participation by elected officials in deliberative and decision-making processes.

63.    The constitutional violations identified above are not hypothetical. Defendant's actions are ongoing and have already deprived Plaintiff of procedural protections, including fair notice and a neutral process.[4] Now, Defendants are poised to take official action that will immediately and irreparably deprive Plaintiff of her constitutional rights unless enjoined.

**COUNT I – 42 U.S.C. § 1983 (PROCEDURAL DUE PROCESS)**

---

[4] The fact that the charges have changed and culminated in an Agenda that includes suspension without a hearing is in itself an existing, current procedural due process violation. *Bowlby* v. City of Aberdeen, Mississipi, 681 F.3d 215, 221 (5th Cir. 2012) ("'[c]onceptually, in the case of a procedural due process claim, 'the allegedly infirm process is an injury in itself' […] A due process injury is therefore complete at the time process is denied") *citing, Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) and *Zinermon v Burch*, 494 U.S. 113, 125, 110 S.Ct. 975 (1990).

64.     Plaintiff incorporates all preceding paragraphs.

65.     Plaintiff possesses a protected interest in her elected office, including the right to exercise the authority of that office and to serve the electorate that chose her.

66.     The Fourteenth Amendment prohibits the State from depriving an individual of a protected interest without due process of law, which requires, at a minimum, notice and a meaningful opportunity to be heard at a meaningful time and in a meaningful manner.

67.     Defendants have deprived and imminently threaten to deprive Plaintiff of that interest through procedures that are constitutionally deficient. Specifically, Defendants have asserted authority to suspend Plaintiff prior to providing any pre-deprivation hearing, despite the fact that the proposed action turns on disputed adjudicative facts. This alone violates the requirement that some form of hearing occur before deprivation.

68.     Under the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the process contemplated by Defendants is constitutionally inadequate.

69.     First, Plaintiff's private interest is substantial. Unlike a routine public employment case, Plaintiff faces removal from elected office, loss of authority, and significant reputational harm in a highly public context. These harms are not temporary and cannot be fully remedied after the fact.

70.     Second, the risk of erroneous deprivation is high. Defendants' proposed action is based on disputed facts and shifting allegations, and Plaintiff has not been afforded a meaningful opportunity to respond prior to deprivation. Even the minimal pre-deprivation safeguards recognized in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985)—notice of charges, explanation of the evidence, and an opportunity to respond—

17

have not been satisfied. A suspension imposed without an effective opportunity to rebut the charges fails to meet constitutional requirements.

71.    Third, the government has no legitimate interest in immediate action without process. The events at issue occurred long ago and the Petition for Removal was filed in August 2025.  It sat dormant until it was suddenly placed on an April 14, 2026, agenda. There is no urgency that justifies bypassing even minimal procedural safeguards.

72.    Defendants' proposed course of action—imposing suspension first and providing process later—reverses the constitutional order and renders the process void.

73.    Accordingly, Defendants have violated and threaten to imminently violate Plaintiff's procedural due process rights under the Fourteenth Amendment.

**COUNT II – 42 U.S.C. § 1983 (SUBSTANTIVE DUE PROCESS)**

74.    Plaintiff incorporates all preceding paragraphs.

75.    Separate and apart from the procedural deficiencies described above, Defendant's conduct also violates Plaintiff's substantive due process rights. Substantive due process prohibits the government from engaging in conduct that is arbitrary, capricious, or without a rational basis, particularly where such conduct infringes a protected interest. Here, Defendants' actions are not merely procedurally flawed—they are fundamentally arbitrary in purpose and execution.

76.    Defendant is pursuing suspension or removal of Plaintiff despite the absence of sufficient evidence of wrongdoing; based on allegations that have been repeatedly investigated and rejected; through a process that has expanded and shifted over time; and

in a manner that singles out Plaintiff for conduct that was lawful and undertaken in the course of ordinary governmental functions.

77.     The timing and nature of Defendant's actions—raising stale allegations long after the underlying events and seeking immediate suspension without necessity—demonstrate that the action is not driven by any legitimate governmental objective but instead reflects an improper and arbitrary exercise of power.

78.     Moreover, Defendants' conduct interferes with core democratic interests by seeking to remove a duly elected official absent any legitimate basis, thereby nullifying the will of the electorate.

79.     Taken together, the absence of a legitimate governmental interest, the arbitrary targeting of Plaintiff, and the use of governmental power for improper purposes constitute conduct that is so arbitrary and egregious as to violate substantive due process.

**COUNT III – 42 U.S.C. § 1983 (MONELL LIABILITY)**

80.     Plaintiff incorporates all preceding paragraphs, including both the procedural due process violations described in Count I and the substantive due process violations described in Count II.

81.     Defendant City is liable under 42 U.S.C. §1983 because the constitutional violations described herein are the direct result of official municipal policy.

82.     The City Council is the final policymaker for purposes of removal and suspension proceedings under the City Charter. Its actions, including the setting of agenda items and the conduct of removal proceedings, constitute official policy attributable to the City.

83. The City, through its final policymaker, has adopted and is poised to implement an official course of action that includes the suspension of Plaintiff without a pre-deprivation hearing; and/or the conduct of proceedings that fail to provide constitutionally required process.

84. These actions are not the conduct of subordinate employees. They are formal decisions of the City's highest policymaking authority.

85. The constitutional violations described herein are the direct and foreseeable result of this policy. The City's decision to proceed with suspension without constitutionally adequate process will deprive Plaintiff of her protected interest without due process.

86. The policy is the moving force behind the constitutional violation. There is no intervening cause. When the City Council acts, it speaks for the City itself.

### V. APPLICATION FOR TEMPORARY RESTRAINING ORDER

87. Pursuant to Rule 65, Plaintiff seeks a narrowly tailored Temporary Restraining Order that solely addresses the "potential suspension" and "potential reprimand" portion of the April 14, 2026, City Council Agenda:

> Discussion and/or possible actions on preliminary and procedural matters for removal proceedings of the mayor, including but not limited to potential certification of Articles of Impeachment, potential suspension, potential reprimand, potential denial of removal action, potential scheduling of pretrial hearing(s) and/or removal hearing, and/or potential adoption of rules and procedures for pretrial hearing(s) and/or subsequent hearings as well as rules of evidence, standard of proof, order of proceedings, and potential deadlines for motions, summons, and/or witness lists.

Plaintiff asks the Court to enter a restraining order that preserves the status quo and orders the Council to refrain from entertaining or acting on a "potential suspension" or "potential reprimand" without a pre-deprivation hearing.  The TRO sought would have the effect of removing such two punitive items from the Council's April 14, 2026, agenda only.  The request is made necessary due to language in the City's Charter Art. II, Section 11's subsection (c):

> *"Pending charges for removal, the council may suspend the challenged member from office for a period not exceeding thirty days by the majority vote of all council members holding office, with the exception of the challenged member."*

When the undersigned asked the City's counsel to confirm on behalf of his client that a suspension of the Mayor was off the table at the April 14, 2026, council meeting when the agenda item is to be discussed, such assurance could not be provided.  Even more, when council member Hon. Gil Hernandez commented to media about the upcoming April 14, 2026, agenda item, he declared, "We are technically the Judge and jury on this process […]."

**LIKELIHOOD OF SUCCESS ON THE MERITS**

88.     Plaintiff is likely to succeed.

89.     Defendant's proposed suspension without a pre-deprivation hearing violates clearly established due process principles. Even under the minimal standards applied in public employment cases, some opportunity to respond must be provided before deprivation. That has not occurred here.

90.    Moreover, the absence of any legitimate governmental need for immediate action renders Defendant's conduct arbitrary and unconstitutional.

91.    Plaintiff is therefore likely to prevail.

**IRREPARABLE HARM**

92.    Plaintiff will suffer irreparable harm absent relief.

93.    Suspension from elected office results in immediate loss of authority; inability to perform official duties; reputational harm that cannot be repaired; and deprivation of the electorate's chosen representation.

94.    These harms cannot be remedied after the fact. The constitutional injury occurs the moment the suspension is imposed.

**BALANCE OF EQUITIES**

95.    The balance of equities overwhelmingly favors Plaintiff.

96.    Plaintiff faces loss of constitutional rights and removal from office. Defendant faces only a delay in proceeding.

97.    The relevant comparison is simple: Plaintiff loses her office; Defendant waits.

**PUBLIC INTEREST**

98.    The public interest strongly favors relief.

99.    The public has a compelling interest in constitutional governance; fair and lawful procedures; and preserving the results of democratic elections.

100.    Enjoining unconstitutional conduct serves, rather than harms, the public interest.

22

**NECESSITY OF IMMEDIATE RELIEF**

101.   Defendant is poised to act imminently. Without intervention, Plaintiff will be deprived of her constitutional rights before any meaningful process is provided.

102.   A Temporary Restraining Order is necessary to preserve the status quo and prevent irreparable injury.

103.   Plaintiff requests that the Court set security under Rule 65(c) in a nominal amount, or waive the bond requirement entirely. This case seeks to prevent violations of constitutional rights, and Defendants face no risk of monetary harm from the issuance of injunctive relief. Accordingly, a nominal bond is appropriate.

104.   Plaintiff respectfully requests that the Court:

   a. Issue a Temporary Restraining Order enjoining Defendant from suspending Plaintiff without a pre-deprivation hearing;

   b. Enjoin Defendant from proceeding under any constitutionally deficient process;

   c. Set a prompt preliminary injunction hearing; and

   d. Award all further relief to which Plaintiff is entitled.

105.   The undersigned has been contacted by counsel for the City, Mr. Hal Goerge, Jr., 5350 South Staples Street, Suite 431, Corpus Christi, Texas 78411.  Mr. George's email address is halgeorge@sbcglobal.net, and he will receive a copy of this Complaint via email. It is Plaintiff's intent that Mr. George receive notice of any hearing on her request for a temporary restraining order.

23

106.   Plaintiff asks the Court to set a hearing on a preliminary injunction, and, after hearing the request, to issue a preliminary injunction against Defendant.

## VI. PLAINTIFF'S DAMAGES

107.   Plaintiffs incorporate all of the foregoing in this section for all purposes as if fully restated herein.

108.   Plaintiff seeks all damages available under §1983, including reputational injury, and loss of elected office; nominal damages; attorneys' fees under 42 U.S.C. §1988, 29 U.S.C. § 794a(b), and 42 U.S.C. § 12205 and as otherwise allowed by law; and all equitable relief.  Plaintiff reserves the right to amend such plea should Defendant choose to further damage Plaintiff.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein, that the Court enter the temporary restraining order prayed for herein, the preliminary injunction prayed for herein, and that upon final hearing she has judgment against Defendant for:

a. Compensatory damages;

b. Attorneys' fees;

c. Costs of court;

d. Pre-judgment and post-judgment interest at the highest rate allowable under the law; and

e. All other relief, legal and equitable, to which Plaintiff is justly entitled.

24

Respectfully submitted,


/s/ John Flood
John Flood
Texas Bar No. 07155910
Southern District of Texas bar number 12593
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 654-8877
(361) 654-8879 Fax
john@floodtriallawyers.com
Irma@floodtriallawyers.com
Attorney-in-Charge for Plaintiff

25