United States District Court
Southern District of Texas
**ENTERED**
April 27, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAULETTE M. GUAJARDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:26-CV-111 |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER

Pending before the Court is an application for a temporary restraining order ("TRO") (Dkt. 22) filed by Plaintiff Paulette Guajardo ("Guajardo") against the City of Corpus Christi, Texas ("the City") and five members of its city council—Carolyn Vaughn; Gil Hernandez; Sylvia Campos; Kaylynn Paxson; and Eric Cantu. Considering Plaintiff's motion and the applicable law, the Court respectfully **DENIES** the motion. Accordingly, the TRO previously entered by the Court (Dkt. 8) will expire **at 5:00 p.m. on April 27, 2026**. By separate notice, the Court will set a hearing on Plaintiff's motion for a preliminary injunction.

### TEMPORARY RESTRAINING ORDERS

Guajardo has sued Defendants under 42 U.S.C. § 1983 ("Section 1983") and Texas state law, and she seeks a TRO restraining Defendants from proceeding with removal proceedings against her. (Dkt. 22 at pp. 13–20). To obtain a TRO, an applicant must demonstrate entitlement to a preliminary injunction. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021). In the Fifth Circuit, the following well-

1 / 9

established framework generally governs the determination of whether to grant a preliminary injunction:

> To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. Because a preliminary injunction is an extraordinary remedy, it should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements. Failure to sufficiently establish any one of the four factors requires this Court to deny the movant's request for a preliminary injunction.
> *Id*.

## ANALYSIS

Based on the current evidentiary record, the Court concludes that Guajardo has not clearly carried the burden of persuasion on the four preliminary injunction factors. Among other things, Guajardo has not clearly established a substantial likelihood of success on the merits of her claims.

—*Section 1983*

Guajardo brings most of her claims under Section 1983. "To state a claim under §1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

i.    Procedural and Substantive Due Process

Guajardo claims a violation of her rights under the procedural and substantive due process components of the Fourteenth Amendment's Due Process Clause. (Dkt. 22 at p.

13). "Procedural due process requires the government to follow appropriate procedures before it deprives a person of an interest in life, liberty, or property; substantive due process ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes." *Patterson v. Defense POW/MIA Accounting Agency*, 398 F. Supp. 3d 102, 116 (W.D. Tex. 2019). "In other words, procedural due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process ensures that such state action is not arbitrary and capricious." *Id.* (brackets and quotation marks omitted).

A claim under either component of the Due Process Clause requires a plaintiff to establish "a liberty or property interest that is entitled to due process protection." *McIntosh v. Barbour*, No. 4:10-CV-72, 2010 WL 5169045, at *4 (N.D. Miss. Dec. 14, 2010); *see also Atkinson v. Pustilnik*, No. 4:22-CV-4315, 2025 WL 2856557, at *9–10 (S.D. Tex. Oct. 8, 2025) ("To prevail on either claim, Ms. Atkinson must establish a protected interest."). "It is a well-established principle, however, that public officials do not have a property interest or right to hold elected office." *McIntosh*, 2010 WL 5169045 at *4; *see also Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause."); *Wilson v. Birnberg*, 667 F.3d 591, 597–98 (5th Cir. 2012) ("[W]e continue to hold that public office does not constitute property within the meaning of the Due Process Clause."); *Gosey v. City of Forest Hill, Texas*, No. 4:11-CV-47, 2011 WL 2883639, at *1–2 (N.D. Tex. July 15, 2011) ("By this action, plaintiff, the mayor of City, seeks to hold City liable for injuries he

allegedly suffered in connection with his suspension from office in December 2010. . . . Because he is an elected official, plaintiff has no property interest in his position as mayor.").

At this time, under binding authority from the Fifth Circuit and the United States Supreme Court, as well as highly persuasive authority from other district courts, the Court concludes that Guajardo has not established a property interest in her position as mayor that is entitled to federal due process protection. Accordingly, Guajardo has not clearly shown a substantial likelihood of success on the merits of this claim.

ii.    Equal Protection

Guajardo also claims a violation of her rights under the Fourteenth Amendment's Equal Protection Clause. (Dkt. 22 at p. 18). Specifically, Guajardo brings a "class of one" equal protection claim.

A plaintiff bringing a class-of-one equal protection claim must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Being similarly situated is key. Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Hines v. Quillivan*, 982 F.3d 266, 272–73 (5th Cir. 2020) (quotation marks omitted). To determine whether persons or groups are similarly situated, the Court must "inquire as to whether they are in all relevant respects alike." *Texas Entertainment Association, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021)

(quotation marks omitted). As the Seventh Circuit aptly phrased it in a class-of-one case, "[i]t is clear that similarly situated individuals must be very similar indeed." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). Because there is no suspect class involved, a class-of-one plaintiff must show that there is no "reasonably conceivable state of facts that could provide a rational basis for the classification." *Integrity Collision Center v. City of Fulshear*, 837 F.3d 581, 589 (5th Cir. 2016). "Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather the burden is on the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis." *Id.* (quotation marks omitted).

In support of her equal protection claim, Guajardo contends that she is being treated differently from members of the Corpus Christi City Council who "participated in the same collective legislative acts alleged in the articles of impeachment" against her. (Dkt. 22 at p. 18). However, the record does not reflect that Guajardo and any particular council member were alike in all relevant respects. Furthermore, the record does not reflect that the removal proceedings against Guajardo—which were initiated by a petition filed by six registered voters (Dkt. 22-3 at p. 2)—lack a rational basis. Accordingly, Guajardo has not clearly shown a substantial likelihood of success on the merits of this claim.

iii.    First Amendment Retaliation

Guajardo also brings a First Amendment retaliation claim. (Dkt. 22 at p. 16).

In order to successfully establish a First Amendment retaliation claim, Guajardo must show that: (1) she was engaged in Constitutionally protected activity; (2) Defendants' actions "caused [her] to suffer an injury that would chill a person of ordinary firmness from

continuing to engage in that activity[;]" and (3) Defendants' actions "were substantially motivated against [her] exercise of [C]onstitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To prevail on such a claim, a plaintiff must show that the government defendant's "retaliatory animus" was a "but-for cause" of the plaintiff's subsequent injury, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021) (quotation marks omitted). "A First Amendment retaliation claim fails if the action would have been taken anyway." *Id.* (quotation marks omitted).

The record does not reflect that the removal proceedings against Guajardo would not have commenced absent a retaliatory motive on the part of Defendants. As previously mentioned, the removal proceedings were initiated by a petition filed by six registered voters. (Dkt. 22-3 at p. 2). Accordingly, Guajardo has not clearly shown a substantial likelihood of success on the merits of this claim.

—*Texas state law*

Guajardo brings one claim under Texas state law—an *ultra vires* claim alleging that Defendants "lack legal authority to continue to pursue removal proceedings under the City Charter, or any other law." (Dkt. 22 at pp. 15–16).

Under Texas law, a "plaintiff may bring an *ultra vires* claim against a government official in certain narrow instances, such as when she violates statutory or constitutional provisions." *Martin v. Burgess*, --F.4th--, 2026 WL 1084252, at *5 (5th Cir. Apr. 22, 2026) (brackets, quotation marks, and citations omitted). "To succeed on an *ultra vires* claim, a

plaintiff must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (quotation marks omitted).

Guajardo bases her *ultra vires* claim on her contention that the City's charter "allows only for impeachment of 'council members,' not the Mayor." (Dkt. 22 at p. 15). Article II, Section 1 of the City's charter[1] provides that the City's council "shall consist of eight council members and a mayor[:]"

**Sec. 1. Membership and term.**

(a)   The city council shall consist of eight council members and a mayor. Five council members shall be elected by majority vote from single member districts, each member being a resident of his or her respective district and each district having as near as practical the same population; three council members shall be elected at large by plurality vote with winners required to gain at least twelve percent of the total votes cast for all candidates for all at large council member positions; and the mayor shall be elected at large by majority vote. The city council shall by ordinance equalize the single member districts as required by law; provided, however, no such ordinance shall be enacted less than ninety days before a regular election.

But, as Guajardo points out, Article II, Section 11 of the City's charter, which governs removal proceedings, only mentions "council member[s]" and does not specify that it applies to the mayor:

---

[1] The Court accessed the City's charter at the following URL: https://library.municode.com/tx/corpus_christi/codes/code_of_ordinances?nodeId=PTICH_ARTIICICO_INGE.

**Sec. 11. Removal.**

(a)    A council member shall be subject to removal by the council or by any other means authorized by law for:

  (1)    Willful violation of any code of ethics or conflicts of interest provision under state or federal law or city ordinance.

  (2)    Willful violation of any express prohibition of this Charter.

  (3)    Misconduct, malfeasance, incompetence, inability or willful neglect in performance of official duties.

  (4)    Conviction of any felony, or any misdemeanor involving moral turpitude.

  (5)    Failing to maintain any residency requirement provided by law.

  (6)    Absence from three consecutive regular council meetings without leave of absence first had, except due to circumstances over which the council member had no control.

(b)    A removal action by the council may be instituted on its own initiative, or shall be instituted upon petition by five or more registered voters, and any final decision to remove a member shall be by the majority vote of all council members holding office, with the exception of the challenged member. The council may provide by ordinance for the referral of any disciplinary matter involving a council member to the ethics commission for recommendation. The challenged member shall have the right to written articles of impeachment, an opportunity to be heard, to be represented by counsel, to summon witnesses who shall be required to give testimony, and to reasonable advance notice of the hearing The burden of proof shall be on those bringing the charges. The hearing shall be open to the public, and the conclusions and findings of the council shall be final. If the member is removed, a complete statement of the reasons therefor shall be filed with the city secretary. The council shall additionally have the authority to reprimand or suspend a member for a period of not more than thirty days if removal is not warranted.

(c)    Pending charges for removal, the council may suspend the challenged member from office for a period not exceeding thirty days by the majority vote of all council members holding office, with the exception of the challenged member.

(d)    Commission of any of the violations specified in subparagraphs (1) through (5) above shall additionally be grounds for forfeiture of office in proceedings pursuant to state law.

(e)    A member who is removed from office, whether pursuant to this section, by recall or other legal proceeding, or who resigns after any such proceedings have been initiated, shall not be eligible to be appointed to or run as a candidate for city office for two years from the date of removal, recall or resignation.

The Court, however, is not convinced that the City's charter unequivocally excludes the mayor from removal or impeachment proceedings. Article II, Section 12 of the City's charter—which immediately follows the section discussing removal of council members— provides explicit instructions regarding what to do "[i]n the event of . . . recall or impeachment of the mayor[:]"

**Sec. 12. Vacancy in office of mayor.**

(a)   In the event of death, resignation, permanent disability, forfeiture of office, recall or impeachment of the mayor, or if for any reason a vacancy shall exist in the office of mayor, the council member elected at large who received the highest number of votes in the last regular election shall immediately become the mayor, provided that such council member shall not be at that time the subject of any recall petition on file with the city secretary. notwithstanding the foregoing, in the event more than one year remains until the next regular city council election or the council member designated to become mayor is the subject of a recall petition on file with the city secretary, a special election shall be called by the then remaining council members to fill the vacancy in the office of mayor, and if there then are no remaining council members such special election shall be forthwith called by the county judge of Nueces County, Texas.

(b)   Any person who becomes mayor as provided above shall have all the duties and powers of the mayor for the remainder of the unexpired term of the mayor, unless sooner removed as provided in this Charter. In the event a council member becomes mayor, the office of the council member shall become vacant, and such vacancy shall be filled as provided in this article.

The record does not reflect that Defendants are acting without legal authority or in violation of the City's charter. Accordingly, Guajardo has not clearly shown a substantial likelihood of success on the merits of this claim.

## CONCLUSION

Guajardo's pending request for a TRO (Dkt. 22) is respectfully **DENIED**. Accordingly, the TRO previously entered by the Court (Dkt. 8) will expire **at 5:00 p.m. on April 27, 2026**. By separate notice, the Court will set a hearing on Plaintiff's motion for a preliminary injunction.

SIGNED at Houston, Texas on April 27, 2026.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE